IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Tostado Sanchez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 5443 |
| | ) | |
| | ) | |
| Crown Equipment Company & | ) | |
| Edwardo Ruiz | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

Plaintiff Jose Sanchez alleges that defendant Crown Equipment Company ("Crown") negligently failed to maintain a forklift that it rented to his employer, third-party defendant Joe & Ross, Inc. ("J&R"), resulting in his injury. Before me is Crown's motion to strike a defense from J&R's answer to the third-party complaint. For the reasons that follow, I grant that motion.

1

## I.

Under Federal Rule of Civil Procedure 12(f), I can "strike from a pleading an insufficient defense." "Affirmative defenses will be stricken only when they are insufficient on the face of their pleadings." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citations omitted). Affirmative defenses must contain "a short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "While the Seventh Circuit has not addressed whether the *Twombly-Iqbal* standard applies to affirmative defenses, judges in this district have generally found these requirements to apply." *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015).

This means that an affirmative defense must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.

Sanchez worked for J&R as a warehouse associate at an ice cream distribution center in Illinois. On February 23, 2024, another J&R employee was driving a forklift that J&R had rented from Crown. The forklift's reversal light and alarm were not working that day, and the other employee backed the forklift over Sanchez's foot. Sanchez then sued Crown for negligently maintaining the forklift.

Sanchez sued Crown, rather than his employer J&R, because Sanchez's employment was covered by the Illinois Workers' Compensation Act, 820 ILCS § 305/1 *et seq.* That act generally bars civil suits against employers to whom it applies, limiting their employees' compensation to that available under the act. *Id.* §§ 305/3, 305/5. Crown, though, suspected that J&R shared some of the blame for the accident and impleaded J&R as a third-party defendant with a claim for contribution. In its answer to the third-party complaint, J&R asserted the affirmative defense that, under *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (Ill. 1991), its maximum liability in a contribution action is capped at its maximum liability under the Worker's Compensation Act. Given that Sanchez had already filed a claim for worker's compensation, the defense asserted, there was nothing left for Crown to win.

Pending before me is Crown's motion to strike that affirmative defense, in which it argues that a provision of the rental contract between Crown and J&R waives J&R's 'Kotecki cap.'

## III.

To rent the forklift which injured Sanchez, J&R signed a "Full Maintenance Service Agreement" with Crown.[1] Paragraph 15 of the contract reads:

**Indemnification**

[J&R] shall defend and hold Crown harmless from and against any and all of the following whether actual or alleged, unless caused by Crown's negligence: all damages, claims, suits, proceedings, liens, penalties, liabilities and expenses (including attorney's fees) arising out of or in any manner related to [J&R]'s possession, use or operation of the equipment, and resulting from injury or death of any person or damage to the property occurring on or about [J&R]'s premises.

ECF 61-1 at 7. Crown argues that this language, especially "all damages" and "[all] liabilities and expenses (including attorney's fees)," constitutes an implied waiver of the *Kotecki* cap both for contribution and for litigation expenses and fees. In its response to the motion to strike, J&R asserts three theories, which I address in ascending order of complexity.

First, J&R contends that the contract contains no express waiver of the *Kotecki* cap. This is true, but that solves nothing, because Crown's contention is that the waiver is implied.

---

[1] J&R points out that its name is made out incorrectly at the top of the contract, but it does not dispute that it was a party thereto. ECF 65 at 7.

4

Second, J&R posits that the contract language prohibits Crown from ever recovering under the contract in a negligence suit. The indemnification provision states that J&R is liable to Crown unless the damages for which Crown is seeking indemnification were "caused by Crown's negligence." ECF 61-1 at 7. Sanchez's suit against Crown is for negligence. So, the argument goes, if Crown loses, then the damages it will owe Sanchez will have been, necessarily, "caused by Crown's negligence," and not subject to the indemnification provision.

Crown responds, correctly, that this argument misapprehends joint and several liability. Under the Illinois Joint Tortfeasor Contribution Act (the "Contribution Act"), 740 ILCS § 100/1 *et seq.*, every person who contributed to a plaintiff's injury is liable to the plaintiff for all of the plaintiff's damages, even if that person contributed relatively little to the injury. So, if Crown were to lose its lawsuit with Sanchez, Crown would owe Sanchez one hundred percent of his damages, even if the finder of fact had determined that Crown's negligence was responsible for only one percent of Sanchez's injury and that J&R's negligence was responsible for the other ninety-nine percent. This is the basis on which Crown impleaded J&R for contribution. What the indemnification provision says is that Crown cannot recover from J&R the percentage of Sanchez's damages due to its own negligence;

but Crown *can* recover from J&R for *J&R's* negligence—in this hypothetical, that other ninety-nine percent of Sanchez's damages. And Crown is also right that the contract provides for the recovery of its litigation expenses and fees in the event that it wins the lawsuit with Sanchez.

Third, J&R contends that the language of the indemnification provision does not impliedly waive the *Kotecki* cap. This argument is also based on a misapprehension, but I need to lay some foundation to explain that mistake. Both parties agree that a seminal case here is *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295 (Ill. 1997).

*Braye* was a welder who was injured while working at an Archer-Daniels-Midland ("ADM") construction site. *Id.* at 1297. He was employed by All Tri-R, Inc. ("All Tri"). *Id.* Like Sanchez, Braye filed a worker's compensation claim with his employer All Tri and then sued the only other party he could, ADM, for negligence. *Id.* Like Crown, ADM then filed a third-party complaint against All Tri for contribution and argued that language in a contract between them had waived All Tri's *Kotecki* cap:

> If [All Tri's] work under the order involves operations by [All Tri] on the premises of [ADM] or one of its customers, [All Tri] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Tri]

6

> shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri], its agents, employees or subcontractors.

*Id.*

This contract confronted the court with two questions. First, as here, can an employer waive the *Kotecki* cap through contract? *Id.* at 1297. And second, is the contract void under Illinois's Construction Contract Indemnification for Negligence Act (the "Indemnification Act")? *Id.*

To explain where things went wrong for J&R, I need to start with the *Braye* court's resolution of that second question. Among other things, the Indemnification Act, 740 ILCS § 35/0.01 *et seq.*, prohibits construction contracts from providing for indemnification for a party's own negligence. The idea behind the law is that if a construction contractor can insure against his own negligence, he is more likely to be negligent in ways that will harm his employees or passers-by. And the contract in *Braye* could be read to run afoul of the Indemnification Act. The contract provided that All Tri would indemnify ADM unless the damages at issue were "due solely...to [ADM's] negligence." *Braye*, 676 N.E.2d at 1298. Read literally, that would require All Tri to indemnify ADM for harm caused by ADM's negligence as long as some other party was at least partially to blame. *Id.*

The court resolved the second question by pointing to extra-textual evidence to allow it to read "solely" out of the contract. First, the court noted that "statutes and laws in existence at the time a contract is executed," meaning the Indemnification Act, "are considered part of the contract," that it is presumed "that parties contract with knowledge of the existing law," and that "a construction of a contract which renders the agreement enforceable rather than void is preferred." *Id.* at 1303. Next, the court pointed out that ADM's third-party complaint had explicitly claimed only contribution, meaning that ADM was not seeking to enforce the contract *as if* it allowed indemnification for ADM's own negligence. *Id.* at 1304. And then the court read those facts and principles together to state that the parties, aware of the Indemnification Act, and although they used old boilerplate whose literal terms violated it, had actually intended to form a contract in line with the act. *Id.*

*Braye*'s resolution of the *Kotecki* cap issue was simpler. The court noted that it had already been decided that "in the context of a third-party action, an employer's promise to pay for liability attributable to its own negligence operated as a waiver of the limitation set forth in *Kotecki*." *Id.* at 1298. And the court held that "Illinois law and public policy do not prohibit the enforcement of a contract whereby an employer agrees to remain

liable for the full amount of damages attributable to its own negligence, notwithstanding the *Kotecki* cap." *Id.* at 1301.

I explain all this because J&R seems to have conflated the two questions and is arguing that a court will *only* find an implied waiver of the *Kotecki* cap as a way to *avoid* finding a contract void under the Indemnification Act. The argument then goes that, because the instant contract does not implicate the Indemnification Act, there is no need to find an implied *Kotecki* waiver in order to avoid voiding it. ECF 65 at 2-6.

The confusion undergirding this argument may have arisen because the cases that Crown cited in its motion to strike all involved construction contracts and turned on the same two questions as *Braye. See generally Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968 (Ill. 1997) and *Virginia Sur. Co., Inc. v. Northern Ins. Co. of N.Y.*, 866 N.E.2d 149 (Ill. 2007). But the second *Braye* question has no application to this case. First, the Indemnification Act has nothing to do with the *Kotecki* cap, and the *Braye* court did not waive the *Kotecki* cap to avoid voiding the contract. Second, the contract at issue in this case is not a construction contract. And third, even if it were a construction contract, the language in the Crown contract is in line with the Indemnification Act: it disclaims indemnity for any damages due to Crown's negligence.

9

Most of the implied waiver section of J&R's response to the motion to strike is given over to its mistaken argument about the Indemnification Act, and it does not parse the language of the indemnification provision to attempt to disprove an implied waiver. But this is no problem, because the words in the contract are clear, and "[i]f the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). Paragraph 15 reads, in pertinent part:

> [J&R] shall defend and hold Crown harmless from...all damages, claims...liabilities and expenses (including attorney's fees) arising out of...[J&R]'s possession [of the forklift] and resulting from injury...of any person...occurring on or about [J&R]'s premises.

ECF 61-1 at 7. Here, there is a claim arising out of J&R's possession of the forklift which resulted from the injury of a person which occurred on J&R's premises as a consequence of which Crown may owe damages, expenses, and fees. And the expansive language of the contract—"all" damages, claims, expenses, and fees—constitutes an implied waiver of the *Kotecki* cap as to Crown's expenses and fees and J&R's contribution up to its pro-rata share of liability in Sanchez's injury. *Liccardi*, 687 N.E.2d at 972-73 (finding an implied *Kotecki* cap waiver in a substantially similar contract provision).

10

**IV.**

I grant Crown's motion and strike the *Kotecki* cap affirmative defense from J&R's answer to the third-party complaint.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge
Dated: July 1, 2026

11